**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE: STACEY A. WHARAM,<br><br>Debtor. | Case No. 26-10626-KHK<br>Chapter 11 |
| ELIZABETH A. MYLLENBECK AND<br>RICHARD W. MYLLENBECK<br><br>Plaintiffs,<br><br>v.<br><br>STACEY A. WHARAM, and<br>DANIEL WHARAM<br><br>Defendants. | Adv. Proc. No. _________________ |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Elizabeth A. Myllenbeck and Richard W. Myllenbeck, (the "Plaintiffs" or the "Myllenbecks"), by counsel, and pursuant to 11 U.S.C. § 523 and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, file this Complaint to determine the dischargeability of certain debts of Stacey A. Wharam ("Stacey Wharam" or the "Debtor") and allege as follows:

## BACKGROUND

On July 16, 2026, the Myllenbecks timely filed a proof of claim in these proceedings setting forth the basis of their Claim (Claim 15 in the Claim Register) (the "Claim"). The Claim is composed of those causes of action brought against the Debtor and others, pre-petition in the Circuit Court for the City of Alexandria as alleged in their Verified First Amended Complaint

therein (the "Amended Complaint") and the exhibits thereto as supplemented by Supplemental Claims each included with the Claim.

The Claim is related to the December 15, 2022 sale of the Myllenbecks' business, Sonoma Cellar, LLC (sometimes referred to as the "Company"). Although funded by a loan obtained by the Debtor and her husband from a lender and a promissory note for the deferred purchase price made by the Debtor and her husband to the Myllenbecks, the Debtor's husband was the sole purchaser. The parties' agreement divided the rights and responsibilities of the Sellers and Buyer by reference to the date of settlement, with the Myllenbecks assuming personal responsibility to pay all liabilities of the Company incurred from the operation of the business up to that date and correspondingly being personally entitled to receive all credits which accrued from the operation of the business prior to that date.

Following closing, a dispute arose over the Myllenbecks' entitlement to receive certain federal tax refunds for Employee Retention Credits ("ERCs") that the business had earned in 2020 and 2021 by continuing the employment of its staff during the difficult COVID 19 period. When it became apparent that Mr. and Mrs. Wharam were unwilling to deposit the ERC checks the Myllenbecks had received for these two years in escrow until agreement could be reached or a Court could decide the legal and equitable ownership of the funds, the Myllenbecks filed suit in the City of Alexandria to have such a determination made (the Pending State Court Action).[1]

During the pendency of that action, however, the Debtor and her husband, after reporting to the IRS that the checks had been stolen, were successful in February of 2024 in obtaining replacement checks from the IRS totaling $474,913.31 which the Debtor initially deposited into the account of Sonoma Cellar, LLC. Within days thereafter, however, the Debtor transferred

[1] Case No. 23-11780, styled Myllenbeck et al. v. Sonoma Cellar, LLC et al., currently pending in the Circuit Court of Alexandria.

more than 95% of such funds into the accounts of other businesses owned by her husband and operated by Debtor and applied these funds to the expenses of the other businesses and her personal debts and expenses.

Notwithstanding the Debtor's discovery obligations in the pending Alexandria Circuit Court litigation and Debtor's awareness that she could defeat the relief requested by the Myllenbecks if she comingled these funds with others, the Debtor concealed the receipt of such funds from the Myllenbecks for five (5) months until July 11, 2024, roughly a month before the scheduled trial when she reported to her counsel that $474,913.31 in 2020 and 2021 ERCs had been received and promptly spent.

On September 24, 2024, roughly two months following such disclosure, the Wharams caused Sonoma Cellar, LLC to file for bankruptcy protection. That case is currently pending in this Court as Case No. 2024-011780-KHK (the "Sonoma Cellar Bankruptcy Case"). In that case, the Court granted in part the Myllenbecks' Motion for Summary Judgment and entered a judgment in favor of the Myllenbecks against Sonoma Cellar, LLC, finding that the Myllenbecks were entitled to receive these ERCs. The Court's ruling and judgment are currently under appeal to the U.S. District Court. This adversary proceeding seeks to hold the Debtor and her husband, Daniel Wharam liable for the $474,913.31 she absconded with and to find that such liability is non-dischargeable as to the Debtor.

**PARTIES**

1. On March 16, 2026, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code.

2. The Myllenbecks are individuals and creditors of the Debtor.

**JURISDICTION AND VENUE**

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

5. This Court has proper venue pursuant to 28 U.S.C. § 1409.

## FACTS

6. On December 15, 2022, Myllenbecks, as the Sellers, and Daniel Wharam, as the Purchaser, executed and delivered to each other a written agreement (the "Sale Agreement") attached as Exhibit 1 to the Amended Complaint, which provided for the sale of the Myllenbecks' ownership interests in Sonoma Cellar, LLC to Daniel Wharam for $500,000 (the "Purchase Price").

7. On the same date and as part of the same transaction, Defendants Daniel Wharam and Debtor Stacey Wharam (collectively, the "Wharams") executed and delivered to the Myllenbecks a Confessed Judgment Promissory Note in the principal amount of $150,000 and attached form UCC-1 Financing Statement for that deferred portion of the Purchase Price paid in exchange for Myllenbecks' ownership interests in Sonoma Cellar, LLC (the "Promissory Note") attached to as Exhibit 2 to the Amended Complaint. Collectively the Sale Agreement and the Promissory Note are sometime referred to as the "Transaction Documents".

8. Although not a Purchaser under the Sale Agreement, the Debtor had actual knowledge of its terms, having substantially negotiated the terms, attended closing of the sale and approved any changes made to the Transaction Documents at such closing.

9. Such knowledge necessarily included the obligations of the parties set forth in paragraph 8 of the Sale Agreement and the Myllenbecks entitlement thereunder to receive all credits that accrued to the Company with respect to the operation of the Company prior to the time and date of Closing.

10. Notwithstanding Debtor's active and financial interest in the acquisition, she received no ownership interest in Sonoma Cellar LLC.

11. The references in the Sale Agreement to Sonoma Cellar, LLC being a Virginia corporation, having Articles of Incorporation and bylaws, having outstanding capital stock and the Sellers named therein selling and conveying all of the issued and outstanding stock to the Purchaser were factually erroneous, were overlooked by the parties at closing and are believed by the parties to be an inadvertent error in the drafting of the document.

12. During the negotiation of the transaction which is the subject of the Sale Agreement, the Myllenbecks furnished the Purchaser with copies of the Sonoma Cellar LLC tax returns for 2019, 2020 and 2021 (the "Sonoma Cellar LLC Historic Tax Returns") which state that Sonoma Cellar LLC is a limited liability Company.

13. The third recital paragraph in the Sale Agreement to the effect that the Sellers want to sell the entirety of their interest in the Company to the Purchaser and the Purchaser desires to acquire that interest accurately sets forth a correct statement of the intent of the parties to the transaction.

14. To be consistent with the intent of the Purchaser and the Sellers, the Sale Agreement should have referenced the fact that Sonoma Cellar LLC was a Virginia limited liability company, and the Purchaser was buying the Sellers' ownership interests in such limited liability company.

15. Notwithstanding the erroneous description in the Sale Agreement, the Purchaser and the Sellers consummated the intended transaction by Sellers conveying the entirety of their ownership interests in the limited liability company Sonoma Cellar LLC to the Purchaser.

16. Since the closing of the transaction contemplated by the Sale Agreement, the Debtor and her husband continued to operate Sonoma Cellar LLC as a Virginia limited liability company.

17. Closing on the sale occurred on December 15, 2022, the same day the Transaction Documents were executed by the parties.

18. Since the closing of the sale of the Company on December 15, 2022, Daniel Wharam became and continues to be the sole owner of the Company.

19. On December 29, 2022, Daniel Wharam executed an operating agreement for Sonoma Cellar, LLC (the "Operating Agreement").

20. The Operating Agreement makes absolutely no provision for the existence of officers, vests the entire responsibility for the management of all of the Company's administrative and day-to-day management functions in the Manager, identified as Daniel Wharam, and provides no authority for the Manager to delegate any of such duties to anyone else.

21. After the filing of the Sonoma Cellar LLC Bankruptcy Case, on or after October 20, 2024, Daniel Wharam executed the only amendment of the Sonoma Cellar, LLC Operating Agreement, purporting to appoint the Debtor as a Vice President of Sonoma Cellar, LLC.

22. Prior to the bankruptcy filing by Sonoma Cellar, LLC, Debtor was never an employee of Sonoma Cellar, LLC and performed no managerial services for Sonoma Cellar,

LLC, but was employed by Fontaine Café, Inc., an entity owned by her husband, which has never contracted to, and did not perform, any managerial services for Sonoma Cellar. LLC.

23. Any actions relating to Sonoma Cellar, LLC undertaken by Debtor prior to the bankruptcy filing by Sonoma Cellar, LLC and the amendment of its Operating Agreement were undertaken by Debtor in her personal capacity in furtherance of her personal self-interest and financial benefit.

24. Alternatively, and to the extent Debtor is not estopped and establishes that her actions were acting on behalf of Sonoma Cellar, LLC, then Debtor had a fundamental fiduciary duty of loyalty to Sonoma Cellar LLC which would prohibit her as its agent from engaging in intentional torts or unlawful conduct that subjects the company to legal liability, reputational harm, or financial loss and a common law fiduciary duty to Sonoma Cellar, LLC which required that the Debtor refrain from taking any action that is self-interested or otherwise fails to serve the interests of the Company.

25. Debtor's conduct in violation of her fiduciary duties to Sonoma Cellar LLC, is consequently outside the scope of any engagement as agent.

26. Even if purporting to act on behalf of Sonoma Cellar, LLC, Debtor had an independent personal stake in achieving the unlawful objective of transferring the ERC refunds out of Somona Cellar, LLC's bank account into the account of another entity controlled by the Debtor and her husband with the intent to deprive the Myllenbecks of such refunds for the financial benefit of herself and her husband.

27. Notwithstanding the foregoing, following the sale and prior to the Operating Agreement's amendment, the Debtor repeatedly represented herself publicly and in bank and

official filings on behalf of Sonoma Cellar, LLC variously as a member, managing member or owner of Sonoma Cellar, LLC.

28. Pursuant to the Sale Agreement, at the closing on December 15, 2022, the Wharams initiated a bank wire transfer of $350,000 to an account for the Myllenbecks and executed and delivered the Promissory Note for $150,000 to the Myllenbecks.

29. In order to purchase Sonoma Cellar, LLC, Daniel Wharam and Stacey Wharam borrowed $550,000 from Michael B. Donahue, Belike Holdings, LLC and executed and delivered a promissory note in the amount of $550,000 payable to Belike Holdings, LLC dated November 22, 2022 from Daniel Wharam and Stacey Wharam (the "Wharam-Belike Note").

30. On December 15, 2022, Stacey Wharam was indebted, in amounts in excess of $2,000,000 to creditors of hers, including their successors and assigns, whose debts were not discharged in Stacey Wharam's first bankruptcy (Case No. 15-10501 in the U.S. Bankruptcy Court for the Eastern District of Virginia ("Stacey Wharam's First Bankruptcy")).

31. In Stacey Wharam's First Bankruptcy, these debts were excepted from discharge pursuant to Orders of this Court pursuant to 11 U.S.C. §523(a)(2) (obtaining money by fraud and false representations) , 11 U.S.C. §523(a)(4) (for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny) and 11 U.S.C. §523(a)(6) (for willful and malicious injury by the debtor to another entity or to the property of another entity).

32. Additionally, in Stacey Wharam's First Bankruptcy Case, the Defendant Daniel Wharam was the subject of an Adversary Proceeding (Adv. Pro. No. 17-01013) brought by the Chapter 7 Trustee alleging fraudulent conveyances between he and his wife (the debtor in that proceeding) depriving the bankrupt estate of such assets which was settled by Mr. Wharam paying of a portion of the alleged fraudulent conveyances.

33. During the period 2018 through December 15, 2022, Daniel Wharam purchased three (3) other restaurant businesses known as Fontaine Caffé, Inc., SRDG, Inc. d/b/a Grape & Bean Rosemont and Rosemont Cellar, and Kaizen Tavern LLC. (the "Prior Restaurant Purchases")

34. The Prior Restaurant Purchases, like the purchase of Sonoma Cellar, LLC were structured so that Daniel Wharam was the sole owner, with no interest therein being acquired by Stacey Wharam.

35. The purchase of each the restaurant and was so structured to conceal any appearance of financial benefit to Debtor which might be the subject of collection actions by her creditors.

36. From 1997 through at least July 14, 2026, Daniel Wharam was a full-time salaried employee at the World Bank.

37. Pursuant to the Sale Agreement, the $150,000 balance of the $500,000 Purchase Price was to be made in eighteen (18) equal monthly payments commencing February 1, 2023.

38. The Promissory Note provided for monthly payments commencing March 1, 2023.

39. The Wharams made none of the monthly payments due under the Sale Agreement and the Promissory Note until after Judgment was confessed on the Note on August 15, 2024.

40. Pursuant to a Consent Order Granting Partial Summary Judgment as to Count III entered by in the Pending State Court Action on August 1, 2024, judgment was confessed against the Defendants Stacey Wharam and Daniel Wharam under the Promissory Note pursuant to its terms on August 12, 2024, in the amount of $214,957.67.

41. The Promissory Note provided that it was to be secured by various assets of the Company, however, Defendants never executed and delivered an agreement granting such a security interest to the Myllenbecks.

42. Nor did the Defendants cause Sonoma Cellar, LLC to execute and deliver such a security, agreement to the Myllenbecks, notwithstanding that such acts are contemplated and implied to occur by the language of the Transaction Documents.

43. In addition to the Transaction Documents, a contract implied-in-fact existed between the Myllenbecks and Sonoma Cellar LLC that following closing, the Myllenbecks shall be responsible for the payment of all obligations that were incurred by the Company and shall be entitled to receive all credits that accrued to the Company, in each such instance, prior to the time and date of Closing.

44. Pursuant to paragraph 8 of the Sale Agreement and the analogous implied-in-fact contract with Sonoma Cellar, LLC, at Closing the Myllenbecks assumed all of the obligations of Sonoma Cellar, LLC that were incurred in the operation of the Company prior to the time and date of the Closing and the Myllenbecks were assigned the ownership of all credits that accrued to Sonoma Cellar, LLC from the operation of the Company prior to the time and date of the Closing.

45. As a consequence, the Myllenbecks were entitled to the immediate possession of the proceeds of such credits, including in particular the ERCs, whenever received by Sonoma Cellar or the Purchaser.

46. During the period of negotiation for the purchase of Sonoma Cellar, LLC, Daniel and Stacey Wharam obtained the assistance of their regularly engaged bookkeeper and tax preparer, Joey Love and Love Low Taxes, Inc. and were provided with copies of the Sonoma

Cellar, LLC's tax returns for 2019, 2020 and 2021, quarterly cash basis profit and loss statements for the roughly same period and documents pertaining to Sonoma Cellar, LLC's lease of its restaurant facility.

47. Stacey Wharam provided the terms of the acquisition, and on December 22, 2022, a copy of the fully executed Sale Agreement to Joey Love at Love Low Taxes, Inc.

48. Mr. Love thereafter commenced assisting the Wharams with issues related to Sonoma Cellar ERCs until at least December 1, 2023, when Stacey Wharam, Daniel Wharam and Joey Love participated in a Zoom conference with Marc Miller regarding the lawsuit filed by the Myllenbecks, and who is able and allowed to file for the ERCs for tax years 2020 and 2021, the tax filings of Sonoma Cellar, LLC and anything Mr. Love's company was doing for Sonoma Cellar, LLC.

49. On April 28, 2022, Elizabeth Myllenbeck contacted Renner & Company CPA, P.C. ("Renner"), the accountants she and her husband used for tax matters for Sonoma Cellar, LLC and spoke with one of their accountants, Paige Mason about commencing work to determine and apply for ERCs for 2020 and 2021 for Sonoma Cellar, LLC.

50. In September 2022 Elizabeth Myllenbeck emailed Paige Mason (Rener) regarding the status of work on ERCs to which she responded on October 13, 2022.

51. Renner's office did preliminary work on potential ERCs on November 29, 2022 and November 30, 2022 including a lengthy telephone call between Paige Mason and Elizabeth on November 30, 2022 to review information.

52. On December 2, 2022, Paige Mason telephoned Elizabeth Myllenbeck to advise that their office did not have the requisite expertise to complete the applications.

53. On December 6, 2022 Elizabeth Myllenbeck spoke with Joel Bernstein of Sonoma Cellar's payroll company, Benefit Providers, Ltd/ECCA Payroll Services regarding payroll reports for applying for ERCs for Sonoma Cellar, LLC.

54. After research to find a firm with sufficient expertise to apply for the ERCs for Sonoma Cellar, LLC, Elizabeth Myllenbeck with the assistance of Joel Bernstein located, and on December 6, 2022 contacted, a company named ERC Specialists to engage them to work on getting the ERCs. Elizabeth Myllenbeck then began the process of collecting information regarding payroll taxes and other items and began the application process on ERC Specialists website.

55. On December 9, 2022 Elizabeth Myllenbeck contacted Supporting Strategies, the bookkeeping firm she used for Sonoma Cellar, LLC and requested that they forward payroll information to Bernstein at Benefit Providers/ECCA.

56. On December 9, 2022, Elizabeth Myllenbeck also spoke with Samantha Lipton of ERC Specialists regarding details re completing application.

57. After closing on December 15, 2022, on December 23, 2022, as a result of an email sent by ERC Specialists to Elizabeth Myllenbeck's Sonoma Cellar email address, Daniel Wharam learned of Ms. Myllenbeck's pursuit of the ERCs and Daniel Wharam contacted ERC Specialists to change the account name to him, which request was declined by ERC Specialists

58. Upon learning from ERC Specialists of the attempt to change the name of the ERC Specialist Account to Daniel Wharam, on December 28, 2022, Ellizabeth Myllenbeck texted Stacey Wharam advising her of the ERC application, that it had been delayed in processing by her regular accountants and requesting Stacey help to correct the attempt by

Daniel to change the account. Stacey responded that she was in a meeting and could not address it then.

59. On December 29, 2022, not having heard back from Stacey Wharam in response to the prior day's text, Elizabeth Myllenbeck emailed Stacey Wharam and the Wharam's counsel Marc Miller to advise that she and her husband were entitled to the ERCs as a consequence of Paragraph 8 of the Sale Agreement.

60. Such email constituted the initial notice of the Myllenbecks' entitlement to the ERCs pursuant to paragraph 8 of the Sale Agreement.

61. As a consequence, Debtor was aware of Sonoma Cellar, LLC's fiduciary duty to turn over the ERC refunds when received to the Myllenbecks.

62. Neither Stacey Wharam nor the Wharam's counsel responded to Elizabeth Myllenbeck's text of December 28, 2022 or email of December 29, 2023.

63. On January 3, 2023, ERC Specialists on behalf of the Myllenbecks completed and thereafter filed with the IRS, the ERC applications in the form of amended IRS Forms 941 (Forms 941-X) for the second, third and fourth quarters of 2020 and the first second and third quarters of 2021

64. In a series of emails on January 5, 2023, between and among the Elizabeth Myllbeck, Richard Myllenbeck Stacey Wharam and the Wharam's counsel, Marc Miller, the parties disagreed about whether Sonoma Cellar. LLC could continue using its historic EIN after the sale and other matters, however, the Wharam's counsel advised that the Myllenbecks were responsible for the filing of tax returns with respect to Sonoma Cellar, LLC through December 15, 2022 and his clients were thereafter responsible.

65. The desire of Sonoma Cellar LLC's purchaser to retain the historic EIN of Sonoma Cellar, LLC was solely for ease of operation with its vendors and had nothing to do with the ERCs, which the Defendants did not discover until after closing.

66. Notwithstanding the Purchaser's sworn testimony to that effect, following the Wharams discovery of the Myllenbecks' engagement of ERC Specialists to pursue the ERCs, the Defendants have asserted that the Employee Retention Credit refunds relating to the operation of Sonoma Cellar, LLC in 2020 and 2021 belong to the buyer of Sonoma Cellar, LLC, Daniel Wharam, because following the sale of Debtor's limited liability company interests from the Myllenbecks to Daniel Wharam, the historic Employee Identification Number ("EIN") that had been assigned by the IRS to Sonoma Cellar, LLC originally when Sonoma Cellar, LLC was formed and owned by Mr. and Mrs. Myllenbeck: (i) was owned by Daniel Wharam; (ii) stayed with Sonoma Cellar, LLC because it was a stock sale; and/or (iii) could be used by the buyer, in lieu of the buyer applying for & receiving a new EIN and accordingly the ERC funds belong to the buyer.

67. On January 4th and 5th, 2023, the Myllenbecks paid ERC Specialists fees for assisting with the ERC applications for Sonoma Cellar in the amount of $43,532.33.

68. Notwithstanding the plain language of Section 8 of the Sale Agreement, the Debtor in combination with Daniel Wharam, Joseph Love, his wholly owned company, Love Low Taxes, Inc. and Defendants Sonoma Cellar, LLC, Fontaine Cafe Inc. and Grape and Bean Rosemont (each of such companies being solely owned or controlled by Daniel Wharam) acted to intentionally interfere with the Plaintiffs' rights to receive the funds represented by the ERC checks and tax refunds attributable to the operation of Sonoma Cellar LLC in 2020 and 2021 (the "ERC Refunds") as hereafter more specifically set forth.

69. Following the closing on the Sale and after learning that Elizabeth Myllenbeck had applied for refunds from the IRS with respect to payroll taxes for certain quarters of 2020 and 2021 occasioned by the Employee Retention Credits allowed by the 2020 CARES Act, Daniel Wharam and Stacey Wharam engaged Joseph Love, a tax return preparer, and his company Love Low Taxes, Inc. to also prepare and file with the IRS for such refunds totaling roughly $500,000.

70. Specifically, in January 2023 Debtor engaged her accountant Joey Love for the purpose of filing duplicate ERC applications on behalf of Sonoma Cellar, LLC with the IRS for the purpose of redirecting the resulting ERC refunds to herself and her husband instead of the Claimants.

71. Debtor did not disclose to the Claimants that she had caused duplicate applications for the ERC refunds to be filed with the IRS.

72. However, in March 2023, Debtor asserted through counsel that contrary to the term of the parties' agreements, her husband was entitled to keep the ERC refunds as the Wharams were entitled to continue to use Somona Cellar LLC' Employee Identification Number with the IRS.

73. On or about March 17, 2023, Joseph Love through his company Love Low Taxes, filed Forms 941-X entitled "Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund" with respect to Sonoma Cellar LLC for seven quarters in 2020 and 2021, requesting refunds of payroll taxes paid during those quarters of 2020 and 2021 by virtue of the Employee Retention Credits allowed by the 2020 CARES Act.

74. Both the Wharams and Mr. Love had knowledge of Section 8 of the Sale Agreement and have acknowledged that under this section, the Plaintiffs were entitled to receive such ERC Refunds.

75. In January, 2023 Stacey Wharam requested Joey Love and Love Low Taxes to apply for ERCs on behalf of Sonoma Cellar LLC and Love agreed to do so for 20% of the amounts obtained.

76. On March 10, 2023, pursuant to the Sale Agreement, the Myllenbecks, by counsel, gave a second notice that they asserted a claim under paragraph 8 of the Sale Agreement to the ERCs in the amount of at least $435,000 and disagreed with any assertion by the Defendants of their entitlement thereto.

77. Exhibit 53 to the Myllenbeck's Motion for Summary Judgment in the Sonoma Cellar Bankruptcy Case (Dkt #185) is an accurate summary of the Form 941-X filings for Sonoma Cellar, LLC made by ERC Specialists at the request of the Myllenbecks and by Joe Love and Love Low Taxes at the request of the Wharams.

78. During June of 2023, the Myllenbecks received mail at their home which, although unopened, appeared to be correspondence from the IRS including six (6) checks (the "Initial ERC Checks") made payable to:

SONOMA CELLAR LLC
DANIEL W WHARAM MB

79. Following the institution of the Pending State Court Action, during the discovery deposition therein of Stacey Wharam on July 22, 2024, the foregoing mail received was opened and determined to contain checks and accompanying correspondence from the IRS identifying the checks as refunds of payroll taxes paid by Sonoma Cellar, LLC in 2020 and 2021 pursuant to employee retention tax credits earned in 2020 and 2021.

80. Following their receipt, the Myllenbecks' counsel requested in email correspondence with the Defendants' counsel from July 14 – 31, 2023, that the mail be opened at Defendants' Counsel's office, copied, copies provided to the Myllenbecks and that the funds be deposited into an account under the control of the Defendants' counsel until the ownership of the funds payable by such checks could be determined by the parties or the Court. In response, the Defendants demanded that the mail be delivered to their counsel unopened and declined the proposal to deposit the funds in their counsel's trust account pending resolution of the dispute.

81. On August 4, 2023, the Myllenbecks filed the Pending State Court Action and on August 7, 2023 served the Defendants with the Original Complaint, by consent, on their counsel.

82. From the Original Complaint, the Defendants were informed of the Myllenbecks efforts to implead the ERC funds into the Circuit Court of the City of Alexandria, their assertion of a legal and equitable interest in such ERCs and a request for the imposition of a constructive trust, which they were specifically informed in the Original Complaint would be impaired if the Defendants were able to comingle these funds with others so as to defeat the requirements of tracing.

83. Debtor had actual knowledge that upon receipt by Sonoma Cellar, LLC of the ERC refunds, it would have a fiduciary duty to remit those funds to the Claimants.

84. On September 22, 2023, the Myllenbecks propounded Requests for Production of Documents to the Defendants requesting, inter alia, the production of all documents relating to communications, including any filings with the Internal Revenue Service, regarding the ERCs, to which the Defendants responded on October 19, 2023. Debtor was thus aware that the Debtor and the other Defendants were required to produce all communications with third parties, including the IRS, regarding the ERC Refunds.

85. No document responsive to this request was ever provided, except the Defendants did produce a copy of a partnership tax return relating to Sonoma Cellar, LLC dated April 25, 2023, filed by Joseph Love of Love Low Taxes for the calendar year 2022.

86. In violation, *inter* alia, of their discovery obligations under the Rules of the Virginia Supreme Court, the fiduciary duties of Sonoma Cellar, LLC to the Claimants and in furtherance of Debtor's plan to interfere with the Claimants' written and implied contract rights, the Debtor concealed communications with the IRS regarding the ERC Refund from the Myllenbecks.

87. After the Original Complaint had been served on the Defendants, Daniel and Stacey Wharam filled out and filed with the IRS, IRS Forms 3911 requesting the issuance of replacement checks for the ones in dispute and the subject of the Pending State Court Action asserting under penalty of perjury that such checks had been stolen.

88. No copies of the IRS Form 3911s were ever provided to the Myllenbecks in response to their discovery.

89. Additionally, among the communications with the IRS that the Debtor concealed for five (5) months until July 11, 2024, slightly more than a month from the scheduled trial of the Alexandria Circuit Court action, was Defendants' receipt, in February 2024, of correspondence and checks from the IRS for ERC Refunds for six (6) quarters of 2020 and 2021 totaling $474,914.31.

90. Following extended efforts to voluntarily obtain compliance from Defendants in the Pending State Court Action with the Myllenbecks' discovery requests, on July 8, 2024 the Myllenbecks moved to compel discovery.

91. On July 11, 2024, the Wharams' counsel revealed for the first time that his clients had received six (6) checks issued by the IRS on February 6, 2024 for ERC refunds for six quarters of 2020 and 2021 totaling $474,914.31 (the "ERC Refund Checks") and that the checks had been deposited by his clients and the money spent.

92. Pursuant to an Order Compelling Discovery entered August 14, 2024 in the Pending State Court Action, Defendants finally produced bank records showing the Defendants deposited these ERC Refund Checks into an account in the name of Sonoma Cellar, LLC on February 12, 2024 and within days thereafter transferred $452,000 to accounts in the name of Defendant Fontaine Cafe, Inc. and from there transferred at least $452,000 into an separate account in the name of Fontaine Cafe, Inc and at least $60,00 into an account in the name of Defendant Grape and Bean Rosemont.

93. Each of the foregoing banking transactions were done at the direction and under the supervision of the Debtor with the knowledge, concurrence and participation of Debtor's husband, Daniel Wharam.

94. Each of the foregoing banking transactions constituted a wrongful taking and exercise of authority over the Myllenbecks ERCs, depriving them of their possession in denial of their right to receive them.

95. Such transfers were not made with the intent to further the business interests of Sonoma Cellar, LLC, but rather with the intent to obtain and preserve for the exclusive benefit of the Debtor and her husband, the ability of the Debtor and her husband to apply such funds to the personal debts and obligations of the Debtor and her husband and to the debts and obligations of other entities owned by the Debtor's husband.

96. The personal debts and obligations for which the Debtor converted the ERCs belonging to the Myllenbecks included, but were not limited to, the payment of management fees, a salary to the Debtor and automobile lease payments for the benefit of the Debtor under the guise of a falsely documented management agreement that was prepared at the direction of the Debtor after the commencement of the Sonoma Cellar LLC Bankruptcy Case.

97. Additionally, during the three months prior to the filing of the petition in the Sonoma Cellar, LLC Bankruptcy, at the direction and under the supervision of the Debtor, Sonoma Cellar, LLC was caused to pay from its bank account $85,000 on the Fontaine Café, Inc. American Express credit card balance.

98. According to the sworn testimony of Sonoma Cellar, LLC's representative, Stacey Wharam, at Sonoma Cellar LLC's continued 341 meeting, payments on Fontaine Café, Inc.'s American Express credit card were made from whichever bank account of the several businesses the Wharams owned and operated had money to pay down the substantial balance.

99. Pursuant to this Court's Order for 2004 Examination (Dkt# 95 in the Sonoma Cellar Bankruptcy Case) and Order Regarding Motion for Contempt and Sanction (Dkt# 167 in the Sonoma Cellar Bankruptcy Case)(the "Contempt Order"), Debtor as the representative of Sonoma Cellar, LLC produced a Management Agreement purporting to show that beginning January 1, 2023 and continuing thereafter, Debtor was obligated to pay Fontaine Caffe, Inc. $12,686.25 monthly, consisting of: $5,307.00, being the monthly amount of the payments due from the Wharams under the Wharam-Belike Note; $686.25 as a percentages of the cost of leasing cars for Stacey Wharam and two other Fontaine employees; and $6,693.00 as a percentage of the salaries of Stacey Wharam and two other Fontaine employees as computed in the manner shown in a spreadsheet also produced by Sonoma Cellar, LLC.

100. The properties of the purported Management Agreement document, obtained as a consequence of this Court's Order Regarding Motion for Contempt and Sanction, show that this purported agreement was created on November 7, 2024 at 11:45 a.m., last modified at 2:29 p.m. and then was signed between 3:37 and 3:43 p.m. on November 7, 2024, after the commencement of the Sonoma Cellar Bankruptcy Case.

101. Debtor also asserted an attorney client privilege as to an email from Defendants' counsel Marc Miller to Debtor at 2:30 p.m. on November 7, 2024, however, the timing of that email in relation to the information revealed in the preceding paragraph indicates it was for the purpose of transmitting the newly created agreement to the Debtor.

102. In her July 22, 2024 deposition, two (2) months before the commencement of the Sonoma Cellar Bankruptcy Case, Stacey Wharam testified that: (1) there were no management agreements between Fontaine Caffe, Inc and any of the restaurants owned by Daniel Wharam; that she was not employed by and performed no services for Sonoma Cellar, LLC, and that any intercompany obligations were as a result of maintenance activities which were performed on a cost plus hourly reimbursement basis and that no intercompany management services were performed.

103. The foregoing actions by the Debtor, evidence an attempt by the Debtor to cover up and provide some justification for the transfer of the ERCs out the account of Sonoma Cellar and thereby reflects the Debtor's knowledge that her actions in depriving the Myllenbecks of the ERCs were wrongful.

104. Debtor directly, or by her instruction to outside bookkeepers, applied the ERCs funds to debts and obligations which were the personal debts and obligations of the Debtor and

her husband or entities other than Sonoma Cellar, LLC owned by the Debtor's husband or to pay personal expenses exclusive for the benefit of the Debtor and her husband.

105. Pursuant to the 2004 Examination Order and Order finding Debtor in Contempt thereof (Dkt## 95 & 167 in the Sonoma Cellar Bankruptcy Case) Debtor also produced a spreadsheet and accounting ledgers prepared at the direction of the Debtor by their bookkeeping company purporting to show debts owed by Sonoma Cellar, LLC to Fontaine Caffe, Inc. as well as to Stacey and Daniel Wharam.

106. Among the liabilities of Sonoma Cellar represented on the spreadsheets and accounting records was: i) a debt of $ 514,615.21 to Belike Holdings described as "Belike loan moved to Fontaine; payments made by Fontaine AMEX"; and ii) a purported debt of Sonoma Cellar to Daniel Whartam in the Amount of $208,530.97 annotated as "Pay off Myllenbeck promissory note by Daniel Wharam" which was the amount of money the Myllenbecks agreed to accept in satisfaction of the confessed judgment, described in paragraph 40. above, of the Promissory Note, that she and her husband gave to the Myllenbecks at closing as the balance of the purchase price of Sonoma Cellar, LLC as described in paragraph 7. above.

107. At Sonoma Cellar, LLC's 2004 examination, Stacey Wharam was unable to explain how, or to identify any document by which, the Promissory Note she and her husband gave the Myllenbecks for the deferred portion of the Purchase Price of Sonoma Cellar, LLC or the Wharam-Belike Note by which she and her husband personally borrowed $550,000 to buy Sonoma Cellar, LLC as described in paragraphs 28. and 29. above became the debts of Sonoma Cellar and their payment by the Wharams a debt of Sonoma Cellar, LLC to Fontaine Café. Her explanation was that the owner had the right to say Sonoma Cellar, LLC was going to pay for their purchase of Sonoma Cellar, LLC.

108. On August 29, 2025, Sonoma Cellar, LLC's 2004 Examination continued (the "Continued 2004 Examination"), again with Stacey Wharam appearing as Sonoma Cellar, LLC's designee. Among other matters, Ms. Wharam was questioned about a May 13, 2025 email from Sonoma Cellar, LLC's counsel responding serially to the items the Court ordered Sonoma Cellar, LLC to produce memorialized in its Contempt Order and, *inter alia*, stating unequivocally that despite diligent search: (i) no document had been located transferring the debt obligation that Mr. Wharam incurred to purchase Sonoma Cellar, LLC to Sonoma Cellar, LLC; (ii) nor had any emails, messages or documents transmitting such document or related drafts been located.

109. At the Continued 2004 Examination, although not yet produced in accordance with the 2004 Examination Order or the Contempt Order, Stacey Wharam testified that the document making the money that Daniel Wharam had borrowed personally the debt of Sonomo Cellar had been provided to Debtor's counsel, although Debtor's counsel had no recollection of it being provided and no such document has ever been provided.

110. The conduct of the Debtor and her husband in operating Sonoma Cellar, LLC, comingling their personal debts and obligations with those of Sonoma Cellar, LLC and other businesses owned by Debtor's husband and operated by the Debtor, as in part set forth above, demonstrate that the Debtor and her husband operated Sonoma Cellar, LLC as a mere alter ego of themselves.

111. Each of the banking transactions described in paragraph 92. above were done at the direction of the Debtor, with the knowledge, concurrence and participation of Debtor's husband, Daniel Wharam, for the purpose, with the intent and having the effect of:

a) removing such funds from the account of, and control by, Sonoma Cellar, LLC and ultimately the Myllenbecks;

b) concealing the receipt of such ERCs from the Myllenbecks;

c) taking exclusive control of the ERCs and depriving the Myllenbecks of the ERCs which they were lawfully entitled to receive under paragraph 8 of the Sale Agreement and the implied-in-fact contract with Sonoma Cellar, LLC;

d) obtaining such funds for the exclusive benefit of the Debtor and her husband, to enable them to apply such funds to the personal debts and obligations of the Debtor and her husband and to the debts and obligations of other entities owned by the Debtor's husband, such as the Debtor and her husband may choose, including but not limited to the payment of management fees, a salary to the Debtor and automobile lease payments for the benefit of the Debtor under the guise of a falsely documented management agreement;

e) converting the funds constituting the ERCs which belonged to the Myllenbecks;

f) hindering, delaying or defrauding the Myllenbecks by depriving them of the ERCs which belonged to them;

g) hindering, delaying or defrauding other creditors of Sonoma Cellar, LLC by removing such funds from the account of Sonoma Cellar, LLC, without just cause or excuse, in knowing disregard of the contractual rights of the Myllenbecks aforesaid;

h) tortiously interfering in the contractual rights of the Myllenbeck under the Sale Agreement and implied-in-fact contract with Sonoma Cellar, LLC;

i) aiding and abetting a breach of Sonoma Cellar's fiduciary to the Myllenbecks;

j) acting as a joint tortfeasor in causing Sonoma Cellar to breach its fiduciary obligations to the Myllenbecks;

k) knowingly participating in a fraudulent conveyance in violation of VA. Code §§55.1-400 & 403; and

l) knowingly, intentionally, purposefully, willfully, maliciously and without lawful justification conspiring with others to intentionally interfere in the performance of the Sale Agreement and implied-in-fact contract with Sonoma Cellar, LLC by diverting the ERC Refunds from the Plaintiffs to their individual use and unlawfully and without just cause or excuse diverting such ERC Refunds from the Plaintiffs to themselves in knowing disregard of the rights of the Plaintiffs.

m) taking such actions solely for the Defendants' own self-interest and failing to serve the interests of Sonoma Cellar, LLC..

112. Plaintiffs have suffered damages as a direct and proximate result of the actions of the Debtor of at least $474,914.31.

113. The Sale Agreement was a valid contractual relationship between the Plaintiffs and the Defendant Daniel Wharam.

114. At all relevant times hereto, Defendants Daniel Wharam and Stacey Wharam and by imputation Defendants Sonoma Cellar, Fontaine, and Grape and Bean, as well as Joey Love his company Love Low Taxes, Inc. knew of the Sale Agreement.

115. Acting in concert as described herein, and for the purpose of intentionally interfering in the performance of the Sales Agreement by diverting the ERC Refunds from the Plaintiffs to their individual use, the aforenamed individuals engaged in a scheme to interfere with the performance of the Sales Agreement and unlawfully and without just cause or excuse divert the ERC Refunds from the Plaintiffs to themselves in knowing disregard of the rights of the Plaintiffs.

116. As a consequence of the foregoing willful and malicious acts, Defendant Daniel Wharam breached the Sale Agreement.

117. As a result of the foregoing tortious interference, the Plaintiffs have sustained damages in the sum of at least $474,914.31, the amount of the ERC Refunds of which Plaintiffs are currently aware, which Plaintiffs were entitled to receive under the Sale Agreement.

118. In addition, to compensatory damages of at least $474,914.31, the Plaintiffs also seeks punitive damages in the sum of $350,000.

119. Pursuant to Paragraph 20 of the Sale Agreement, Plaintiffs are entitled to recover against the Defendant Daniel Wharam their reasonable attorneys' fees and costs and with respect to the other Defendants are entitled to an award of attorney's fee and expenses under the principles articulated in Prospect Dev. Co. Inc. v. Bershader, 258 Va. 75, 92 (1999).

## COUNT I

## NON-DISCHARGEABILITY OF PLAINTIFFS' CLAIM UNDER SECTION 523(a)(2) OF THE BANKRUPTCY CODE

120. Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 – 119 above.

121. The Debtor's obligations to the Plaintiffs with respect to the Sonoma Cellar, LLC Employee Retention Credit refunds as set forth in the Plaintiffs' Claim and above are the result of Debtor's false pretenses and actual fraud.

**WHEREFORE**, the Myllenbecks respectfully request that this Court order and determine that the obligations owed to the Plaintiffs as more particularly set forth in their Claim and above are non-dischargeable as to the Debtor pursuant to 11 U.S.C. § 523(a)(2) of the Bankruptcy Code; enter a judgment in favor of the Plaintiffs against the Defendants Stacey Wharam and Daniel Wharam, jointly and severally, for the entire balance of the Plaintiff's Claim, plus pre and post judgment interest; award the Plaintiffs their attorney's fees and costs; and grant such other and further relief it may deem just and proper.

**COUNT II**

**NON-DISCHARGEABILITY OF PLAINTIFFS' CLAIM UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE**

122. Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 – 119 above.

123. The Debtor's obligations to the Plaintiffs with respect to the Sonoma Cellar, LLC Employee Retention Credit refunds as set forth in the Plaintiffs' Claim and above are the result of Debtor's fraud or defalcation while acting in a fiduciary capacity.

**WHEREFORE**, the Myllenbecks respectfully request that this Court order and determine that the obligations owed to the Plaintiffs as more particularly set forth in their Claim and above are non-dischargeable as to the debtor pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code; enter a judgment in favor of the Plaintiffs against the Defendants Stacey Wharam and Daniel Wharam, jointly and severally, for the entire balance of the Plaintiff's Claim, plus pre and post judgment interest; award the Plaintiffs their attorney's fees and costs; and grant such other and further relief it may deem just and proper.

**COUNT III**

**NON-DISCHARGEABILITY OF PLAINTIFFS' CLAIM UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

124. Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 – 119 above.

125. The Debtor's obligations to the Plaintiffs with respect to the Sonoma Cellar, LLC Employee Retention Credit refunds as set forth in the Plaintiffs' Claim and above are the result of a willful and malicious injury by the Debtor against the Plaintiffs.

**WHEREFORE**, the Myllenbecks respectfully request that this Court order and determine that the obligations owed to the Plaintiffs as more particularly set forth in their Claim and above are non-dischargeable as to the Debtor pursuant to 11 U.S.C. § 523(a)(6) of the Bankruptcy Code; enter a judgment in favor of the Plaintiffs against the Defendants Stacey Wharam and Daniel Wharam, jointly and severally, for the entire

balance of the Plaintiff's Claim, plus pre and post judgment interest; award the Plaintiffs their attorney's fees and costs; and grant such other and further relief it may deem just and proper.

**ELIZABETH A. MEYYLENBECK AND**
**RICHARD W. MYLLENBECK**
**By Counsel**

**LAW OFFICES OF MATTHEW A. CLARY, III, PLC**

/s/ Matthew A. Clary, III

Matthew A. Clary, III (VSB No. 12041)
10114 Farrcroft Drive
Fairfax, VA 22030
Telephone: (703) 944-5886
*mclaryiii@cox.net*
*Counsel for Elizabeth A. Myllenbeck and Richard W Myllenbeck.*